■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v BEATO OZUNA, Appellant. [811 NYS2d 646]—

Order, Supreme Court, Bronx County (John N. Byrne, J.), entered on or about April 29, 2004, which denied defendant's CPL 440.10 motion to vacate a judgment of the same court (Lawrence Tonetti, J.), rendered October 10, 2001, convicting defendant, after a jury trial, of criminal contempt in the first degree, and sentencing him to a term of 1⅓ to 4 years, affirmed.

The court properly denied defendant's CPL 440.10 motion without a hearing. Defendant claims in his motion (1) that the court improperly limited his cross-examination of the victim, and (2) that defense counsel failed to respond adequately to the court's ruling. However, these contentions are reviewable on the basis of the record underlying the judgment and their resolution does not require resort to extrinsic evidence. Therefore, defendant's failure to raise *these claims* on direct appeal (*see* 309 AD2d 671 [2003], *lv denied* 1 NY3d 577 [2003]) forecloses any postconviction relief on these grounds (CPL 440.10 [2] [c]).

Even if, as defendant urges, his claims are not record-based, they would nevertheless be inappropriate for CPL article 440 consideration because, as defendant acknowledges, they rest on

the victim's unknown response to a question the trial court did not permit her to answer.

Defendant contends that the victim should have been allowed to answer the question the court disallowed—a question she had already been asked and had already answered on direct examination—as her answer bore on the issue of credibility. However, the victim had already testified on direct that she did not reach out to any members of defendant's family to ask defendant to contact her. Defendant testified on direct that the victim did request that his father ask him to contact her. Therefore, the issue of the victim's credibility was, on this record, before the jury. Notably, the jury resolved credibility issues in defendant's favor when it acquitted him of the much more serious crime of rape in the first degree.

Turning now to the crime of which defendant was convicted, criminal contempt in the first degree, defendant maintains that because the victim wanted him to call her, he had a "legitimate purpose of communication" thereby negating an element of the crime. However, defendant's making twelve calls to the victim, prohibited by court order, in the space of a mere three days, coupled with the fact that the victim reported these calls to the prosecutor, may well have, in the jurors' minds, overwhelmed any supposed, originally legitimate purpose, even if any existed in the first place.

Defendant's claim that his attorney should have called defendant's father as a witness is indeed unsupported by an affidavit from the father, or by any other information establishing that the father could have provided material exculpatory testimony. Thus, a hearing was not warranted, and the court did not improvidently exercise its discretion in denying one on this ground (*see* CPL 440.30 [4] [b]; *People v Ford*, 46 NY2d 1021 [1979]; *People v Session*, 34 NY2d 254 [1974]; *People v Rosario*, 309 AD2d 537, 538 [2003], *lv denied* 1 NY3d 579 [2003]).

While we agree defendant's request for a hearing should not have been denied on the ground that he failed to submit an affirmation from trial counsel explaining his trial tactics or strategy—and, in any event, the court's order does not indicate that this was a basis to deny the motion—any explanation by trial counsel in such an affirmation could not have realistically included the victim's *unknown* response to the question posed on cross. Accordingly, under these particular circumstances, the motion court properly exercised its discretion by summarily denying the article 440 motion since defendant's speculation did not warrant a hearing. In any event, the motion was otherwise

properly denied for the reasons stated herein. Concur—Marlow, J.P., Nardelli and Sweeny, JJ.

Williams and McGuire, JJ., dissent in a memorandum by McGuire, J., as follows: The motion court erred in denying without a hearing defendant's pro se motion under CPL 440.10 on each of the two grounds upon which it relied: that there was "no reasonable probability [the] verdict would have been different" but for trial counsel's alleged failings, and that defendant's claim of ineffective assistance of trial counsel "could or should have been raised on appeal." Accordingly, I would reverse and direct the motion court to determine whether to conduct a hearing on defendant's motion, deny the motion without a hearing due to defendant's failure to either submit an affidavit from his father or explain why he did not submit one, or permit defendant an opportunity to supplement his motion with such an affidavit.

The relevant facts are as follows. Although defendant was indicted for numerous felony offenses, the trial court submitted to the jury one count of first-degree rape and one count of first-degree criminal contempt. The rape charge was based on the testimony of defendant's former girlfriend that he had forcibly raped her not long after she ended their two-year relationship due to defendant's alleged jealousy, harassment and threats. The contempt charge was based on her testimony, corroborated by telecommunications records, that defendant had repeatedly telephoned her while he was in jail following his arrest despite an order of protection prohibiting him from contacting her. She testified as well that he threatened her during certain of those calls by stating he would find her after he was released from jail. Defendant testified on his own behalf. He denied the rape allegation, stated he had ended the relationship and admitted making the telephone calls but maintained they were made at the complainant's request. Specifically, defendant contended his father had spoken to the complainant after defendant's arrest and she asked defendant's father to tell defendant to call her. According to defendant, he did telephone her, and during their telephone conversations she would cry and ask him to call her again.

The jury acquitted defendant of the rape charge and found him guilty of the contempt charge. Defendant was sentenced to an indeterminate prison term of 1⅓ to 4 years, which he has served. This Court affirmed his conviction and the Court of Appeals denied leave to appeal (309 AD2d 671 [2003], *lv denied* 1 NY3d 577 [2003]).

Defendant's claim of ineffective assistance is based first, albeit less substantially, on counsel's failure to move for a mistrial

when the trial court erroneously sustained an objection on hearsay grounds to a question from counsel asking the complainant what defendant's father had said to her during a telephone conversation they had shortly after defendant's arrest. Second, and more importantly, defendant alleged that counsel had failed to call his father to testify at trial even though defendant informed counsel that his father would testify that the complainant had asked him during that telephone conversation to "[t]ell your son to call me."

Such testimony by defendant's father would have been highly relevant. If the complainant indeed asked defendant's father to tell defendant to call her, that testimony would have tended to negate an essential element of the first-degree contempt charge, namely, that defendant had repeatedly made the telephone calls "with intent to harass, annoy, threaten or alarm" the complainant and "with no purpose of legitimate communication" (Penal Law § 215.51 [b] [iv]).

Furthermore, this highly relevant testimony from defendant's father would not have been objectionable on hearsay grounds. Rather, the complainant's out-of-court statement ("Tell your son to call me") would appear to be a "verbal act" that is admissible merely because it was said (see e.g. People v Caban, 5 NY3d 143, 149 [2005]). In substance, it amounts to a statement by the complainant that she was giving her permission to defendant to call her. Similarly, no legitimate hearsay objection could be raised to testimony in a burglary prosecution from the owner of the subject premises that the owner had said the defendant was free to enter the premises just before he did. If the statement by the complainant to the effect that she wanted defendant to call her is not a verbal act, it can only be on the ground that her statement alone could not alter the terms of the order of protection.

In any event, whether it was admissible as a verbal act need not be debated. Unquestionably, testimony by defendant's father that he told defendant that the complainant wanted him to call her on the telephone would be admissible for defendant's state of mind, even if defendant's father falsely so reported to defendant. After all, as indicated above, the People were required to prove both that defendant telephoned the complainant "with intent to harass, annoy, threaten or alarm" and "with no purpose of legitimate communication" (Penal Law § 215.51 [b] [iv]). Thus, such testimony from defendant's father would not be hearsay, and the majority understandably does not contend otherwise.

Moreover, in his motion, defendant asserted (and the People

did not dispute) that during cross-examination the complaining witness answered "No" to a question from counsel asking "Isn't it true . . . that you reached out to [defendant's] family and ask[ed] that he call you?" If credited, testimony by defendant's father that she had done exactly that might have been viewed by the jury as highly relevant and perhaps devastating to her credibility. In this regard, it bears emphasis that the jury's verdict acquitting defendant of the rape charge certainly provides reason to believe the jury entertained doubts about the complainant's credibility.

In short, if credited by the jury, testimony from defendant's father to the effect that the complainant requested that defendant call her and that he so informed defendant of her request would have been powerful evidence that defendant was not guilty of the contempt charge. It would have negated an essential element of that charge, corroborated defendant's testimony on this very subject—his sole defense to the contempt charge—and damaged the complainant's credibility. Although there may be a reasonable explanation for counsel's apparent failure to interview defendant's father and call him to testify, no such explanation is apparent on the existing record (*see People v Baba-Ali*, 179 AD2d 725, 729 [1992] [observing that "we cannot perceive of any trial strategy which would justify the defense counsel's failure to obtain the attendance of a witness . . . who had exculpatory information which tended to exonerate the defendant and substantiate his defense," and holding that "it is apparent that the defendant was not afforded meaningful representation by counsel"]).[1]

Of course, it is possible that the jury would not have credited such testimony from defendant's father, who, as defendant's father, had an interest in the outcome. For this reason, and for other conceivable reasons, he might not have impressed the jury. But the testimony of a witness with an interest in the outcome is not incredible as a matter of law. The motion court,

---

1. With respect to defendant's other allegation about his counsel's performance at trial, the point is not that the court sustained a hearsay objection when counsel asked the complainant what defendant's father had said during their telephone conversation. Whether whatever defendant's father may have said would have been relevant cannot be ascertained on this record. Without knowing what (if anything) the father said, the court did not have any basis for concluding it was hearsay. In any event, the point is the one the People recognize in their brief. As the People acknowledge, in asking the complainant what defendant's father had said, "[c]ounsel's sole purpose . . . was to eventually elicit that [she] asked defendant's father to tell defendant to call her." The People err, however, in arguing that testimony by the complainant that she had made such an out-of-court statement would be hearsay. For the reasons already stated, such a response would not have been hearsay.

which did not preside over defendant's trial, appears to have concluded otherwise in reasoning that there is no reasonable probability that the verdict would have been different had counsel called defendant's father.

In the first place, the motion court erred in requiring defendant to show such a reasonable probability. In contrast to the federal standard (*Strickland v Washington*, 466 US 668 [1984]), New York law "regard[s] a defendant's showing of [such] prejudice as a significant but not indispensable element in assessing meaningful representation" (*People v Stultz*, 2 NY3d 277, 284 [2004]). Second, whether and the extent to which the jury might have found credible such testimony from defendant's father are issues that should not have been resolved against defendant without a hearing. On this record, it is entirely possible that the jury convicted defendant of the contempt charge precisely because the defense did not call defendant's father to corroborate defendant's testimony that the complainant had asked him to contact her. After all, the defense conceded that the telephone call had been made in violation of the order of protection, and defended against the contempt charge on the narrow ground that the calls were not made with the requisite mens rea.

In discussing defendant's less substantial contention in his CPL 440.10 motion, the majority stresses this testimony by defendant, correctly notes that "the issue of the victim's credibility was, on this record, before the jury," and then stumbles. That is, the majority immediately goes on to state that "[n]otably, the jury resolved credibility issues in defendant's favor when it acquitted him of the much more serious crime of rape in the first degree." Inexplicably, the majority appears to be of the view that the jury's doubts about the complainant's credibility somehow undermine rather than support defendant's position. The unstated premise seems to be that additional testimony from the complainant bearing on her and defendant's credibility—not to mention that it also bore on elements of the contempt charge—could not have led the jury to resolve any other credibility issues in defendant's favor and acquit him of the less serious charge. By parity of reasoning, a person charged with murder and convicted of manslaughter on the basis of the testimony of one prosecution witness would have no ground for complaint if his attorney failed to call as a defense witness someone—presumably even a totally disinterested witness—who would corroborate the defendant's testimony that the prosecution witness or some other person committed the crime.

When it does address defendant's claim of ineffective assistance of counsel, the majority brushes it aside on the basis of

the conceded facts that defendant made twelve telephone calls to the complainant over a three-day period (a "mere" three days) which the complainant reported to the prosecutor. These facts, according to the majority, "may well have, in the jurors' minds, overwhelmed any supposed, originally legitimate purpose, even if any existed in the first place."

Whether this conjecture is persuasive (or even whether it is conjecture) need not be discussed. Because a complete acquittal may not have been the inexorable result of defendant's father's testimony, it hardly follows that the motion court properly rejected defendant's ineffective assistance of counsel claim without a hearing. The point is that only after a hearing can the potential effects of counsel's alleged failure—if, indeed, there was a failure—sensibly be evaluated. As noted, defendant was not obligated to establish in his motion that "but for counsel's ineffectiveness, the outcome would probably have been different" (*People v Stultz*, 2 NY3d at 283).[2]

The motion court also erred in concluding that defendant's claim of ineffective assistance "could or should have been raised on appeal." On the contrary, this Court would have been required to reject it if it had been raised on direct appeal, precisely because the trial record does not shed any light on the key factual issues upon which the claim depends. That is, it does not reveal whether defendant in fact told his attorney that his father would have so testified and, if he did, why counsel did not call his father to testify, why counsel did not make an offer of proof when the trial court erroneously sustained the hearsay objection, and why counsel did not move for a mistrial (*see e.g. People v Montes*, 265 AD2d 195, 195-196 [1999], *lv denied* 94 NY2d 882 [2000] ["To the extent that defendant's ineffective assistance of counsel claim makes factual assertions unsupported by the record, such claim would require a motion pursuant to CPL 440.10"]; *People v Boyd*, 244 AD2d 497, 497 [1997],

---

**2.** That is not to say of course that a hearing must always be held whenever a defendant claims that counsel was ineffective for not calling as a defense witness someone who allegedly could have given helpful testimony. In particular cases, it may strain credulity to suppose that the witness would have testified as the defendant alleges, the testimony may be of marginal relevance and sound strategic reasons for not calling the witness either may be apparent on the face of the defendant's claim or may be supplied by the People in their submission in opposition. Here, however, there is nothing inherently implausible about defendant's claim that his former girlfriend asked his father to tell defendant to call her, there is reason to believe the jury had doubts about the complainant's credibility, the testimony defendant's father allegedly would have given was highly relevant, and there is no apparent reason why counsel would not have called defendant's father (other than, that is, a mistaken belief that his testimony would have been inadmissible hearsay).

*lv denied* 93 NY2d 850 [1999] ["The defendant's claim of ineffective assistance of counsel, to the extent that it is premised on his attorney's alleged failure to investigate and call potential alibi witnesses, involves matters which are dehors the record and are not properly presented on direct appeal" (citations omitted)]; *cf. People v Brown*, 45 NY2d 852, 853 [1978] ["Generally, the ineffectiveness of counsel is not demonstrable on the main record, but in this case it is"]).

That counsel was so informed is at least suggested by the question quoted above that counsel put to the complainant on cross-examination and by the subsequent inquiries into the telephone conversation between her and defendant's father. Under these circumstances, it would not have been reasonable to deny the motion on the ground that defendant had failed to submit an affirmation from his former attorney supporting defendant's allegations about his alleged failures (*see People v Radcliffe*, 298 AD2d 533, 534 [2002] [observing that because defendant's CPL 440.10 motion asserting ineffective assistance of counsel is "adverse and hostile to his trial attorney," it would be "wasteful and unnecessary" to "require the defendant to secure an affidavit, or explain his failure to do so"]). The motion court, it should be noted, did not rely on the absence of an affirmation from counsel in denying defendant's motion.

The majority accepts the People's argument that defendant's failure to submit an affidavit from his father is fatal to defendant's motion. The problem with this argument, however, is that under the governing statute the motion court merely was authorized, not required, to deny the motion without a hearing. That statute specifies that if "[t]he motion is based upon the existence or occurrence of facts and the moving papers do not contain sworn allegations substantiating or tending to substantiate all the essential facts" (CPL 440.30 [4] [b]), "the court *may* deny it without conducting a hearing" (CPL 440.30 [4] [emphasis added]).

Putting aside that the allegations of defendant's motion arguably "tend[ed] to substantiate" the claim that counsel had been informed that his father would testify along the lines alleged, the motion court did not rely on this provision in denying the motion. In any event, whether any such defect in the motion should be overlooked is a matter committed to the sound discretion of the motion court. Especially if the motion court appreciated that defendant was not required to show a reasonable probability that the verdict would have been different, it might reasonably have determined to overlook the absence of an affidavit from defendant's father even if it concluded that the sworn

allegations of the motion did not pass muster under the statutory "tending-to-substantiate" standard. The majority offers no explanation of why it would preclude the motion court from even considering whether to exercise its discretion; nor, for that matter, does the majority even discuss the issue of whether the sworn allegations of the motion satisfied the "tending-to-substantiate" standard.

Because the motion court erroneously concluded either that it was required to deny the motion without a hearing under the mandate of CPL 440.10 (2) (a) or was authorized so to deny the motion under CPL 440.10 (3) (a), I would reverse and direct the court to determine whether the allegations of the motion "tend[ ] to substantiate all the essential facts" and, if not, whether or not a hearing nonetheless should be ordered or whether defendant should be given an opportunity to supplement his motion with an affidavit from his father.