People v Cruz (2022 NY Slip Op 22408)

People v Cruz

2022 NY Slip Op 22408 [78 Misc 3d 9]

Accepted for Miscellaneous Reports Publication

Supreme Court, Appellate Term, Second Department, 2d, 11th 
and 13th Judicial Districts

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

As corrected through Wednesday, May 10, 2023

[*1]

The People of the State of New York, Respondent,
v
Raphael Cruz, Appellant.

Supreme Court, Appellate Term, Second Department, 2d, 11th and 13th Judicial Districts, December 23, 2022

APPEARANCES OF COUNSEL

Appellate Advocates (Priya Raghavan and Joshua M. Levine of counsel) for appellant.
Melinda Katz, District Attorney (Johnnette Traill, Amanda Iannuzzi and Theresa Yuan of counsel), for respondent.

{**78 Misc 3d at 11} OPINION OF THE COURT

Memorandum.

Ordered that the judgment of conviction is reversed, on the law, so much of the order dated October 18, 2018, as denied the branch of defendant's motion seeking to dismiss the count of the accusatory instrument charging defendant with driving while intoxicated per se is vacated, that branch of defendant's motion is granted, and so much of the accusatory instrument as charged defendant with driving while intoxicated per se is dismissed and, as a matter of discretion in the interest of justice, the remainder of the accusatory instrument is dismissed.
Defendant was arraigned on December 9, 2016, on an information charging him, insofar as is relevant to this appeal, with driving while intoxicated (per se) (Vehicle and Traffic Law § 1192 [2]), unlicensed operation of a motor vehicle (Vehicle and Traffic Law § 509 [1]) and passing a red light (Vehicle and Traffic Law § 1111 [d] [1]). Following a jury trial, defendant was convicted of those charges.
[*2]
At the arraignment and on the next two court dates, February 15 and May 2, 2017, the People announced their readiness for trial. The following court date, July 11, 2017, the People announced that they were "not ready today, request a good cause exception in light of the [arresting] officer's attending a funeral in the Bronx" (see CPL 30.30 [4] [g]). The court adjourned the matter to September 15, 2017, on which date the People were again not ready to proceed because, the prosecutor explained,{**78 Misc 3d at 12} the arresting officer was on vacation. The matter was then adjourned to October 25, 2017, on which date the People requested "a good cause adjournment in this case," with the prosecutor explaining that the "arresting officer is a member of the military. He is currently deployed in Afghanistan. I have been in contact with the Command. They are unsure of his return." On the next court date, December 22, 2017, the prosecution again stated that the arresting officer was stationed in Afghanistan and would remain deployed with the United States military into the next year, 2018.
In court on March 5, 2018, the People explained that the arresting officer "returned home on February 28th" and that, pursuant to the Uniformed Services Employment and Reemployment Rights Act of 1994 (USERRA), he was entitled to a 90-day "decompression window" before being required to return to work for the New York City Police Department (NYPD) (see 38 USC § 4312 [e] [1] [D]). However, the People informed the Criminal Court, "we are consistently working, trying to reach him and the detective handling this case." On the adjourned date of April 12, 2018, the People informed the court that, contrary to their averment at the previous appearance, the arresting officer was still deployed on military service but was expected to return by the end of May 2018. The People requested an adjournment to early June. The matter was adjourned to June 7, 2018, on which date the prosecutor stated that the arresting officer "has recently returned but has not fully returned to active duty under the NYPD. So the People aren't able to get him [to court]." The matter was adjourned to June 28, 2018, at which time a supervising assistant district attorney (ADA) stated, "I have been following this case very closely myself." The ADA explained that the arresting officer's USERRA leave
"was expiring but . . . the officer is not yet back at work at the police department. . . . I understand there must have been multiple adjournments but it's the People's position all of that time is excludable time because the officer is serving our country in the Armed Forces. He was in Afghanistan and Iraq."
The ADA believed that the witness would be back at the NYPD on August 2, 2018, and thus requested an adjournment to August 6th. The court adjourned the matter to August 9th. It is undisputed that the arresting officer was a necessary witness for the prosecution's case.{**78 Misc 3d at 13}
On August 9, 2018, defendant moved to dismiss the information on statutory speedy trial grounds. The court (Michelle A. Johnson, J.) granted defendant's motion to the extent of ordering a hearing on the People's request for a good cause exclusion of statutory speedy trial for the time the arresting officer was deployed for military service and was on USERRA leave. At the hearing on September 17, 2018, the arresting officer, the sole witness, testified that he received his active deployment order in mid-March of 2017 and immediately informed the NYPD's Military Extended Leave Desk, which coordinates with the Department of Defense on matters of this type. Between May 5, 2017, when he was placed on active duty, and July 2017, he was stationed at different locations in the United States, and then, in July 2017, he was deployed to locations in Africa and was never deployed to Afghanistan or Iraq, as the People erroneously informed the court on several occasions. His deployment ended on May 4, 2018. [*3]The People do not identify the cause or source of the multiple layers of misinformation about the arresting officer's whereabouts and availability from May 5, 2017, to at least October 25, 2017.
The arresting officer's USERRA leave concluded the last week of July 2018, when he returned to work at the NYPD. The arresting officer testified that he sometimes vacationed outside of New York during his USERRA leave. The arresting officer recalled receiving messages from District Attorney's Office representatives while he was either deployed or away from New York City during his leave time. However, when asked by the Criminal Court whether he had been willing to voluntarily appear if defendant's trial would have taken place during the USERRA leave time period, the arresting officer testified, "If I am there [sic], I would have come." The District Attorney's Office never attempted to subpoena him, despite the fact that, when the court, on June 7, 2018, asked the People whether "you can subpoena him as a witness though, right?," the prosecutor responded, "Yes, Your Honor."
By order dated October 18, 2018, the Criminal Court (Michelle A. Johnson, J.) denied the speedy trial motion, finding that the time between the arresting officer's March 2017 military deployment and his July 2018 return to full-time employment with the NYPD was excludable as an exceptional circumstance, pursuant to CPL 30.30 (4) (g).
[1] Because the top count of the information is an unclassified "misdemeanor . . . punishable by . . . imprisonment . . . {**78 Misc 3d at 14}for not more than one year" (Vehicle and Traffic Law § 1193 [1] [b]), the People had to be ready for trial within 90 days (CPL 30.30 [1] [b]). However, in "computing the time within which the [P]eople must be ready for trial . . . , the following periods must be excluded: . . . periods of delay occasioned by exceptional circumstances . . . when the district attorney has exercised due diligence" (CPL 30.30 [4] [g]). The military deployment of an arresting officer, a necessary witness, may be "exclud[ed] as an exceptional circumstance" provided that "the People demonstrated that they exercised due diligence in attempting to make the witness available" (People v Thompson, 118 AD3d 922, 923 [2d Dept 2014]; see People v Zirpola, 57 NY2d 706, 708 [1982]).
Here, the People's lack of due diligence is clear. They appear to have been wholly unaware that the officer was placed on active military duty on May 5, 2017. They asserted that the officer was at a funeral and on vacation during times when he was deployed overseas. The People did not correct this misunderstanding regarding their central witness's military service until nearly six months later, on October 25, 2017. Even then, the People repeatedly misrepresented where he was stationed.
It was not until the arresting officer testified at a hearing on September 17, 2018, that the court and defendant were made fully aware of the contours of his unavailability. Moreover, it was not until then that the court and defendant were also made aware that the officer had been willing to voluntarily come to court and testify during his USERRA leave time.
"USERRA—while it serves the salutary purpose of 'protect[ing] individuals performing, or who performed, uniformed service . . . from adverse employment discrimination on the basis of their uniformed service, and provid[ing] for their prompt restoration to civilian employment when they return to civilian life'—does not relieve the prosecution from their obligation to afford an accused his constitutional and New York State statutory rights to a speedy trial. Thus, the People are required to establish that they exercised due diligence [*4]in securing [the officer's] presence upon his return to the United States" (People v S.F., 63 Misc 3d 198, 207 [Crim Ct, Bronx County 2018] [citations omitted], quoting 77 Fed Reg 43699, 43699 [2012]; see People v Chardon, 83 AD3d 954 [2d Dept 2011]).{**78 Misc 3d at 15}
"[I]n order to demonstrate due diligence, the People must undertake 'credible, vigorous activity' to make the witness available" (People v Figaro, 245 AD2d 300, 300 [2d Dept 1997], quoting People v Washington, 43 NY2d 772, 774 [1977]; see People v Ricart, 153 AD3d 421, 422 [1st Dept 2017]). "[A]s that effort is totally lacking here, the adjournment was not motivated by extraordinary circumstances so as to exclude it from the time chargeable to the People" (People v Friday, 160 AD3d 1052, 1053-1054 [3d Dept 2018]; see People v Zirpola, 57 NY2d 706, 708 [1982] ["(t)he unavailability of a prosecution witness may be a sufficient justification for delay, provided that the People attempted with due diligence to make the witness available" (citation omitted)]). That the People periodically placed telephone calls to the officer, without more, is not enough to demonstrate the necessary degree of diligence required for the People to be granted an exceptional circumstances exclusion of time (see Figaro, 245 AD2d at 301). Therefore, at minimum, the time periods between July 11 and October 25, 2017, and between June 7 and August 6, 2018, should have been charged against the People, rendering the total amount of chargeable time beyond the People's 90-day statutory time. Consequently, the branch of defendant's motion seeking to dismiss the charge of driving while intoxicated (per se) should have been granted.
[2] With respect to the other two counts, both of which are traffic infractions, at the time the action against defendant commenced, it was the case that "CPL 30.30 does not apply to traffic infractions" (People v Jenkins, 58 Misc 3d 150[A], 2018 NY Slip Op 50088[U], *1 [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2018]). During the pendency of the instant appeal, however, the legislature amended CPL 30.30 effective January 1, 2020. Under this new legislative scheme, statutory speedy trial limitations apply to traffic infractions charged in the same accusatory instrument with at least one non-traffic infraction count (see CPL 30.30 [1] [e]; People v Altman, 73 Misc 3d 127[A], 2021 NY Slip Op 50886[U], *1 [App Term, 2d Dept, 9th & 10th Jud Dists 2021]). Yet, "the legislature has not mandated retroactive application of the newly worded CPL 30.30" statute (People v Galindo, 38 NY3d 199, 201 [2022]). Therefore, "because the amended statute was not in effect when the criminal action against defendant was commenced, CPL 30.30 (1) (e) has no application to defendant's direct appeal from th[e] judgment of conviction" (id. at 207). Consequently, the branches {**78 Misc 3d at 16}of defendant's motion seeking to dismiss the traffic infraction charges were properly denied.
[3] Prior to trial, during jury selection, a prospective juror told defense counsel that she "was involved in a huge accident in the past, and that was also an intoxicated person driving." When asked by counsel whether her experience will "affect your ability to be fair in this case," the prospective juror responded, "Yes. That's what I have been trying to say." Thereafter, defendant made a for-cause challenge, which the court denied after finding that counsel had asked "a loaded question" and that the prospective juror had been rehabilitated. In fact, the juror had not been rehabilitated. Counsel did not exercise a peremptory challenge, and the prospective juror was seated as juror No. 1, the jury foreperson (see CPL 270.15 [3]; 360.20). Counsel subsequently exhausted all three defense peremptory challenges on other potential jurors. Defendant's [*5]contention that the court erred in denying his for-cause challenge was waived by his counsel's failure to use a peremptory challenge against that juror (see CPL 270.20 [2]; People v Lynch, 95 NY2d 243, 248 [2000]). Defendant next contends that his counsel was ineffective for failing to use an available peremptory challenge to remove this juror.
Under the federal standard of ineffectiveness review, a "defendant must show that counsel's performance was deficient . . . [and] that the deficient performance prejudiced the defense" (Strickland v Washington, 466 US 668, 687 [1984]). Under the "somewhat more favorable" state standard for ineffectiveness of counsel at trial (People v Turner, 5 NY3d 476, 480 [2005]; see People v Benevento, 91 NY2d 708, 714 [1998]), New York courts "look to the fairness of the proceedings as a whole" (People v Lujan, 114 AD3d 963, 963 [2d Dept 2014]) in determining whether a defendant has received meaningful representation (see People v Caban, 5 NY3d 143, 156 [2005]; People v Stultz, 2 NY3d 277, 284 [2004]; People v Benevento, 91 NY2d at 714; People v Flores, 84 NY2d 184, 187 [1994]). It is the case that a "single error may qualify as ineffective assistance, but only when the error is sufficiently egregious and prejudicial as to compromise a defendant's right to a fair trial. Further, to establish ineffective assistance, a defendant must demonstrate the absence of strategic or other legitimate explanations for counsel's allegedly deficient conduct" (Caban, 5 NY3d at 152 [internal quotation marks and citations omitted]). Here, we can discern no strategic or other legitimate explanation for{**78 Misc 3d at 17} defense counsel's determination that it would not be problematic to seat this potential juror who explicitly and repeatedly demonstrated such clear hostility, due to her personal experience, to anyone driving following any degree of drinking. Consequently counsel's representation fell short of an objective standard of reasonableness, which would normally necessitate a new trial with respect to the two traffic infractions. However, under the particular circumstances presented herein, we are of the opinion that the interest of justice requires the dismissal of the accusatory instrument in its entirety.
Defendant's remaining contentions have been rendered academic, and we decline to address them.
Accordingly, the judgment of conviction is reversed, so much of the order dated October 18, 2018, as denied the branch of defendant's motion seeking to dismiss the count of the accusatory instrument charging defendant with driving while intoxicated per se is vacated, that branch of defendant's motion is granted, and so much of the accusatory instrument as charged defendant with driving while intoxicated per se is dismissed and, as a matter of discretion in the interest of justice, the remainder of the accusatory instrument is dismissed.
Aliotta, P.J., Weston and Buggs, JJ., concur.