OPINION OF THE COURT
 

 Rosenblatt, J.
 

 Defendants in criminal cases have a constitutional right to effective assistance of counsel (US Const 6th Amend; NY Const, art I, § 6). In
 
 People v Baldi
 
 (54 NY2d 137 [1981]), we set the standard for claimed ineffective assistance of trial counsel, holding that the constitutional requirements are met when the defense attorney provides “meaningful representation.” We are now called upon, for the first time, to set a standard for claimed ineffective assistance of appellate counsel. We conclude that the same standard—meaningful representation—should be applied and that in the case before us appellate counsel met the test. In so holding, we reject defendant’s claim that appellate counsel was ineffective for having failed to assail trial counsel’s performance. Accordingly, we affirm the Appellate Division’s denial of defendant’s motion for coram nobis relief.
 

 L
 

 A Nassau County jury found defendant guilty of murder in the second degree and criminal possession of a weapon in the second degree, for which the court sentenced him to concurrent prison terms of 25 years to life and 7V2 to 15 years.
 

 At trial, the People introduced proof that defendant and an accomplice shot and killed Todd Biggins in a park in Uniondale. A park employee testified that just before the shooting she had seen the victim talking on a payphone alongside a park administration building. Shortly after the phone call, two men— defendant and an accomplice—walked past her, toward the victim. From a distance of five or six feet she watched defendant for about 25 seconds. She saw defendant and his companion pull out handguns and shoot the victim several times before fleeing by car. Several months later, she picked defendant out of
 
 *280
 
 a photo array and a lineup.
 
 [1]
 
 She stated that, when killing the victim, defendant had a smirk on his face that she would “never, ever forget.”
 

 The People also proved that, while searching the deceased’s room, police found a paper containing the name “Noey” and a phone number that police linked to defendant.
 
 [2]
 
 Further, by using a digital code, police identified the telephone number of the park payphone and learned that on the date of the murder three calls were placed from that phone to defendant’s beeper. Also, a police detective testified that several weeks after the shooting he saw a car parked in defendant’s driveway. The vehicle resembled the getaway car and was registered to defendant’s mother.
 

 Shortly before trial, almost two years after the murder and about a year after defendant’s arrest, Michelle Dolberry told the Nassau County police that she had witnessed the killing and knew the shooter to be Anthony Anderson, and not defendant. She gave the police a signed, sworn statement to that effect and in a sworn videotaped account repeated it to the prosecutors. The prosecution turned this material over to defense counsel to whom Dolberry reiterated that Anderson was the killer. Anderson’s brother, she said, was with him at the time. Although Dolberry was in jail on an unrelated charge, both sides expected her to testify, and when authorities brought her into court, the trial judge assigned her a Legal Aid lawyer. She refused to testify, asserting her privilege against self-incrimination.
 

 At that, defendant argued that Dolberry’s testimony was critical because it supported his claim of mistaken identity. The defense asked the prosecution to grant Dolberry immunity, urging that without her testimony defendant would be denied due process and a fair trial. The prosecutor, however, declined and, despite defense counsel’s protestations over the prospect of losing Dolberry as a witness, the trial court did not ask her why she felt in danger of self-incrimination. Ultimately, the court concluded that it could not compel her to testify. Defense counsel did not try to get Dolberry’s statements admitted into evidence.
 

 
 *281
 
 After the guilty verdict and sentence, defendant appealed his conviction to the Appellate Division. That Court affirmed (284 AD2d 350 [2001]), and we denied leave (96 NY2d 942 [2001]). Defendant then applied to the Appellate Division for a writ of error coram nobis, arguing that appellate counsel was ineffective for not attacking trial counsel’s failure to offer Dolberry’s statement into evidence. The Appellate Division denied the application (304 AD2d 593 [2003]), and a Judge of this Court granted defendant leave to appeal. We now affirm.
 

 In advancing his claim that appellate counsel was ineffective, defendant contends that this Court should apply the
 
 Baldi
 
 “meaningful representation” standard, and that appellate counsel did not meet it. We will consider these contentions in order.
 

 The Standard for Evaluating Claims of Ineffective Assistance of
 

 Appellate Counsel
 

 In
 
 People v Baehert
 
 (69 NY2d 593 [1987]), we noted that there was no comprehensive statutory mechanism to address collateral claims of ineffective assistance of appellate counsel and called on the Legislature to remedy the problem.
 
 [3]
 
 We held, however, that a defendant who claims to be aggrieved by appellate counsel’s failures could proceed by writ of error coram nobis before the appellate court in which the allegedly deficient representation took place. In the absence of a statutory scheme, this Court recognized that it had no power to entertain appeals from appellate orders granting or denying coram nobis relief
 
 (see People v Marsicoveteri,
 
 79 NY2d 913 [1992])
 
 [4]
 
 and could not establish a standard for claims of ineffective assistance of appellate counsel. The Legislature remedied the problem by amending CPL 450.90 (L 2002, ch 498), authorizing appeals (by permission) to this Court from appellate orders granting or denying coram nobis relief based on claims of ineffective assistance or wrongful deprivation of appellate counsel.
 

 Now presented with the opportunity to review these claims, we must set the appropriate standard. We begin with the
 
 *282
 
 premise that defendants in criminal cases have a federal and state constitutional right to effective assistance of appellate counsel.
 
 [5]
 
 6 Twenty-three years ago, in
 
 Baldi,
 
 we went through a similar exercise when addressing claims of ineffective assistance of trial counsel and concluded that a “meaningful representation” criterion comports with both the Sixth Amendment and our own state constitutional sensibilities. The road to
 
 Baldi
 
 extended over several decades. Because that analysis leads us to the same result in fashioning a rule for evaluating appellate effectiveness, it is important to recognize some of the turns along the way. Equally important is that we have retained
 
 Baldi
 
 in preference to the federal
 
 (Strickland v Washington,
 
 466 US 668 [1984]) standard in evaluating claims of ineffective assistance of trial counsel.
 

 Although appellate lawyers have increasingly challenged the effectiveness of trial counsel (as a basis for reversing convictions), the right to effective trial counsel is not new.
 
 [6]
 
 In the earliest such cases—late 19th and early 20th century decisions—a few courts addressed claims relating to counsel’s abject incompetency and, once in a great while (based generally on the court’s supervisory powers), ordered new trials.
 
 [7]
 

 In New York, we have long recognized the importance of adequate counsel in criminal cases
 
 (see e.g. People v Silverman,
 
 3 NY2d 200 [1957];
 
 People v McLaughlin,
 
 291 NY 480, 483 [1944]), but it was not until 1960 that we began to articulate something approaching a constitutional basis for claims of attorney ineffectiveness
 
 (see People v Tomaselli,
 
 7 NY2d 350, 353-354 [1960]). In
 
 Tomaselli,
 
 we held that a defendant is entitled to reversal when counsel’s representation rendered the trial “a farce and a mockery of justice”
 
 (id.
 
 at 354). We adhered to that
 
 *283
 
 standard
 
 [8]
 
 9and in assigned counsel cases reversed some convictions under it on constitutional grounds.
 
 [9]
 
 In 1976 and 1979, this Court in two cases found counsel’s representation ineffective and thus constitutionally unacceptable
 
 (see People v Droz,
 
 39 NY2d 457 [1976];
 
 People v Bell,
 
 48 NY2d 933 [1979]), but did not use the “farce or mockery” test or even refer to the cases that established it.
 

 Finally, in
 
 Baldi,
 
 we departed from the “farce or mockery” test and articulated a new standard of “meaningful representation.” We recognized, in essence, that a criminal trial should be more efficient, and fairer, than one that rises just above the level of farce. But we have been careful to distinguish between true ineffectiveness and losing tactics or unsuccessful efforts in advancing appropriate defenses
 
 (see People v Henry,
 
 95 NY2d 563, 565 [2000];
 
 People v Berroa,
 
 99 NY2d 134 [2002]).
 

 In
 
 Strickland v Washington
 
 (466 US 668 [1984]), the Supreme Court established a standard for evaluating defendants’ Sixth Amendment claims of ineffective assistance of trial counsel. To prevail, the defendant must prove that trial counsel did not render reasonably competent assistance and that there is a reasonable probability that, but for the counsel’s inadequacy, the outcome of the trial would have been different. Strickland’s prejudice prong is what chiefly separates it from
 
 Baldi.
 

 From time to time, we have referred to the
 
 Strickland
 
 standard and measured counsel’s performance under it,
 
 [10]
 
 but have never applied it with such stringency as to require a defendant to show that, but for counsel’s ineffectiveness, the outcome would probably have been different. Under our
 
 Baldi
 
 standard, we are not indifferent to whether the defendant was or was not prejudiced by trial counsel’s ineffectiveness. We would, indeed,
 
 *284
 
 be skeptical of an ineffective assistance of counsel claim absent any showing of prejudice. But under our
 
 Baldi
 
 jurisprudence, a defendant need not fully satisfy the prejudice test of
 
 Strickland.
 
 We continue to regard a defendant’s showing of prejudice as a significant but not indispensible element in assessing meaningful representation. Our focus is on the fairness of the proceedings as a whole.
 

 Based in part on our State Constitution, this Court had decided
 
 Baldi
 
 three years before
 
 Strickland,
 
 and in two later cases
 
 [11]
 
 declined to abandon the
 
 Baldi
 
 standard for
 
 Strickland’s.
 

 [12]
 

 We now decide that we should apply the
 
 Baldi
 
 standard in connection with claims of ineffective assistance of appellate counsel.
 

 To begin with, it is inapt to have one standard for trials and another for appeals. We are confident that the appellate courts will be able to apply the
 
 Baldi
 
 standard appropriately when dealing with allegations of appellate counsel’s ineffectiveness. Appellate courts are uniquely suited to evaluate what is meaningful in their own arena.
 

 Allegations relating to trial counsel’s performance are difficult to measure based on a cold record. A trial lawyer’s decision to adopt one course or another often rests on strategies that cannot be gleaned from the record on appeal. For that reason, appellate courts usually can’t tell whether trial counsel’s approach was the result of a tactic that does not appear on the record. For example, to the uninitiated eye, it may appear that an attorney should have called a particular witness. Often, however, the trial record will not reveal that the attorney may have had a very good reason, known only to the defense, for not doing so. An appellate court cannot fault the attorney until after the nonrecord proof has been aired.
 

 This is in contrast to appellate argument, which must be based on the record. The appellate court is eminently suited to evaluate appellate counsel’s product because the court examines
 
 *285
 
 the very same record and ordinarily requires no proof beyond its four corners.
 

 In delineating what is meaningful, however, it would be unwise and possibly misleading to create a grid or carve in stone a standard by which to measure effectiveness. Just as defense attorneys enjoy a wide latitude in defending clients at the trial level, appellate lawyers vary in style and approach. A lengthy brief may be a virtue in some instances but not in others. Some arguments properly emphasize two or three cogent issues while others may raise a multiplicity of claims. There can be no rules about these appellate tactics, but there are certain general guidelines.
 
 [13]
 
 Appellate advocacy is meaningful if it reflects a competent grasp of the facts, the law and appellate procedure, supported by appropriate authority and argument. Effective appellate representation by no means requires counsel to brief or argue every issue that may have merit. When it comes to the choice of issues, appellate lawyers have latitude in deciding which points to advance and how to order them. With that in mind, we turn to the claim before us.
 

 Application of the Standard
 

 On his direct appeal to the Appellate Division, defendant submitted a 53-page brief, prepared by two lawyers highly experienced in criminal law and appeals. Their brief reflects it.
 

 In advancing their legal contentions, appellate counsel argued first that defendant’s constitutional right to a fair trial was violated by the prosecution’s refusal to grant immunity to Dolberry and the court’s failure to learn why she invoked the Fifth Amendment. They supported their contention with nine pages of compelling argument, citing relevant state and federal constitutional provisions and decisional law.
 

 Second, and in comparable length and detail, they argued that the court erred in refusing to suppress defendant’s statements in which he revealed his nickname and pager number. The briefs contained pertinent case law dealing with
 
 Miranda,
 
 the pedigree exception, the commencement of judicial proceedings, the right to counsel and the test for what constitutes interrogation.
 

 Third, defendant’s appellate counsel asserted that the court should not have admitted police hearsay testimony regarding
 
 *286
 
 the telephone number of the payphone in the park. Fourth, they contended that the court prejudiced the jury by allowing it to learn of defendant’s aliases, and lastly, that the court should have suppressed the photographic and lineup identifications as unduly suggestive. All arguments were fortified by an abundance of authorities, statutes, record references and clear writing.
 
 [14]
 

 Notwithstanding these well-developed arguments, defendant asserts that appellate counsel should have attacked trial counsel as ineffective for not having tried to get Dolberry’s statements into evidence. We disagree.
 

 People v Robinson
 
 (89 NY2d 648 [1997]) does not support defendant’s contention that the statements were arguably admissible. In
 
 Robinson,
 
 we held that the trial court erred in excluding grand jury testimony of an unavailable witness. Evidence of this type, we held, must be admitted when it is material, exculpatory and has sufficient indicia of reliability.
 

 We agree with defendant that by invoking the Fifth Amendment Dolberry was “unavailable”
 
 (see People v Settles,
 
 46 NY2d 154, 167 [1978]) and that her sworn statements were exculpatory and material. Putting aside that Dolberry was a year off in dating the event and incorrect as to the location of the body, her statements were utterly unreliable. First, she was a convicted felon who, rather than make statements against her penal interests, may have hoped that by coming forward, she would enhance her chances of parole.
 

 Moreover, the circumstances under which Dolberry invoked her privilege against self-incrimination are highly suspect. It is fair to ask what possible reason she would have to invoke the privilege against self-incrimination. Incrimination from what? She was not a suspect in the murder and there is not the slightest suggestion that she could ever be even remotely answerable for it. The most obvious explanation is that she balked because she did not want to face perjury charges. That was the only crime for which she stood to incriminate herself.
 

 
 *287
 
 Given their aroma, the statements bore none of the reliability markings that qualify under
 
 Robinson.
 
 Trial counsel had no proper grounds on which to offer them and, more to the point, appellate counsel had no basis to castigate trial counsel for failing to advance a losing argument.
 

 Dolberry’s statements were inadmissible and we are unwilling to assume that any trial judge, in the exercise of discretion, would have admitted them. Had trial counsel attempted to get the statements before the jury, he would undoubtedly have been rebuffed, and we cannot fault him for not trying. A defendant is not denied effective assistance of trial counsel merely because counsel does not make a motion or argument that has little or no chance of success.
 

 We recognize that in making appellate arguments, attorneys must evaluate the performance of trial counsel and, when appropriate, raise claims of ineffective representation. Although it involves a kind of Monday morning quarterbacking, there are instances—unusual, to be sure, but on occasion merited—when trial counsel’s representation is derelict. The case before us involves a second layer of review, in which the Tuesday morning quarterback assails the Monday morning quarterback for not assailing the quarterback who actually played the game. While there may be instances in which a claim of this type will justify relief,
 
 [15]
 
 this is not one of them.
 

 We have considered defendant’s other contentions and find them to be without merit.
 

 Accordingly, the order of the Appellate Division should be affirmed.
 

 Chief Judge Kaye and Judges G.B. Smith, Ciparick, Graffeo, Read and R.S. Smith concur.
 

 Order affirmed.
 

 [1]
 

 . For several months after the killing, defendant was at large. He was apprehended when a police officer stopped him for a traffic violation and learned of the warrant for his arrest.
 

 [2]
 

 . After his arrest, defendant revealed his nickname, “Noey,” and his beeper number, which matched the one found in the deceased’s room.
 

 [3]
 

 . By that time, however, it had long been established that a defendant who by statute had an absolute right to appeal was entitled to assigned counsel (see
 
 People v Hughes,
 
 15 NY2d 172 [1965]).
 

 [4]
 

 . See also
 
 People v Claudio
 
 (77 NY2d 988 [1991]) in which we dismissed a petition for coram nobis relief, holding that there was no authority for initiating it in the Court of Appeals.
 
 (See generally
 
 Abramovsky, Criminal Law and Procedure,
 
 New York’s Last Common-Law Criminal Procedure: The Writ of Error Coram Nobis,
 
 NYLJ, Mar. 31, 2000, at 3, col 1.)
 

 [5]
 

 .
 
 See Anders v California,
 
 386 US 738, 744 (1967);
 
 Jones v Barnes,
 
 463 US 745 (1983);
 
 People v Gonzalez,
 
 47 NY2d 606 (1979);
 
 People v Bachert,
 
 69 NY2d 593 (1987).
 

 [6]
 

 .
 
 See e.g. Glasser v United States,
 
 315 US 60, 69-70 (1942);
 
 Avery v Alabama,
 
 308 US 444, 446 (1940);
 
 Powell v Alabama,
 
 287 US 45, 57 (1932);
 
 Adams v United States,
 
 317 US 269, 275-276 (1942). For a history of the right to effective assistance of counsel, see, generally, Schwarzer,
 
 Dealing with Incompetent Counsel—The Trial Judge’s Role
 
 (93 Harv L Rev 633, 639-640 [1980]; Finer,
 
 Ineffective Assistance of Counsel,
 
 58 Cornell L Rev 1077 [1973]).
 

 [7]
 

 .
 
 See e.g. State v Gunter,
 
 30 La Ann 536 (1878);
 
 Roper v Territory,
 
 7 NM 255, 33 P 1014 (1893);
 
 People v Schulman,
 
 299 111 125, 132 NE 530 (1921);
 
 see
 
 Annotation,
 
 Incompetency, Negligence, Illness or the Like of Counsel as Ground for New Trial or Reversal in Criminal Case,
 
 24 ALR 1025, 64 ALR 436.
 

 [8]
 

 . Other courts did as well (see
 
 e.g. Commonwealth v Bernier,
 
 359 Mass 13, 267 NE2d 636 [1971]; United
 
 States v Wight,
 
 176 F2d 376, 379 [2d Cir 1949];
 
 Diggs v Welch,
 
 148 F2d 667 [DC Cir 1945];
 
 see generally
 
 Gilles,
 
 Effective Assistance of Counsel: The Sixth Amendment and the Fair Trial Guarantee,
 
 50 U Chi L Rev 1380 [1983]).
 

 [9]
 

 .
 
 See e.g. People v Jones,
 
 25 NY2d 637 (1969);
 
 People v Bennett,
 
 29 NY2d 462 (1972);
 
 People v LaBree,
 
 34 NY2d 257 (1974);
 
 see generally
 
 Donnino, New York Court of Appeals on Criminal Law § 11:10 (2d ed). In assessing claims of ineffective assistance of counsel, we had at one time distinguished between retained and assigned attorneys (see
 
 People v Hernandez,
 
 8 NY2d 345, 347 [1960]), but no longer do so (see
 
 generally
 
 Waltz,
 
 Inadequacy of Trial Defense Representation as a Ground for Post-Conviction Relief in Criminal Cases, 59
 
 NwUL Rev 289 [1964]).
 

 [10]
 

 .
 
 See e.g. People v Taylor,
 
 1 NY3d 174 (2003);
 
 People v Ford,
 
 86 NY2d 397 (1995).
 

 [11]
 

 .
 
 See People v Benevento,
 
 91 NY2d 708 (1998);
 
 People v Henry,
 
 95 NY2d 563, 565 (2000).
 

 [12]
 

 . Of course, in
 
 Baldi
 
 we did not create a state standard of ineffectiveness more difficult to prove than required under the Federal Constitution. In interpreting their own constitutions, states are free to provide greater protection than the Federal Constitution requires (see
 
 California v Ramos,
 
 463 US 992 [1983]). In this sense, the Federal Constitution sets forth a minimum level of rights—a floor—to which states must adhere, but may surpass (see
 
 generally
 
 1 Friesen, State Constitutional Law: Litigating Individual Rights, Claims, and Defenses § l-3[d] [3d ed]).
 

 [13]
 

 . While there are American Bar Association guidelines for defense trial counsel
 
 (see e.g.
 
 ABA Standards for Criminal Justice 4-1.2 [3d ed 1993]), there are none for appellate counsel.
 

 [14]
 

 . Appellate counsels’ brief was a model of organization and clarity. It contains a CPLR 5531 statement, a two-page table of contents, a preliminary statement describing the proceedings below with a synopsis of the arguments to follow, a list of five “questions presented,” a 15-page factual statement with four headings and eight subheadings detailing the pretrial hearing and trial testimony, followed by 32 pages of legal argument covering five points. We do not suggest that presentations of this type (or defendant’s excellent brief on the appeal before us) are required to meet the “meaningful representation” standard. Obviously, many briefs will exceed it.
 

 [15]
 

 .
 
 See e.g. Greer v Mitchell,
 
 264 F3d 663 (6th Cir 2001).