[828 NYS2d 541]

The People of the State of New York, Respondent, v Christos Georgiou, Appellant.

Second Department, January 30, 2007

**APPEARANCES OF COUNSEL**

*David B. Epstein*, Brooklyn, for appellant.

*Richard A. Brown, District Attorney*, Kew Gardens (*John M. Castellano, Johnnette Traill* and *Vered Adoni* of counsel), for respondent.

**OPINION OF THE COURT**

FISHER, J.

The principal issue presented on this appeal is whether the defendant was deprived of the effective assistance of counsel when his attorney failed to ask the trial court to instruct the jury on the affirmative defense to felony murder.

In the late afternoon of May 29, 1995, the 75-year-old victim was assaulted and robbed on the street. She died of her injuries five days later. On June 6, 1995, David Chesney was arrested in connection with the crime. He subsequently pleaded guilty to

robbery in the first degree, as well as to charges pending against him in another case, and was sentenced to a total indeterminate term of imprisonment of from 9²/₃ to 29 years. Sometime in 1999 or 2000, he was visited in prison by police officers. In return for the promise of a favorable letter to his parole board, Chesney agreed to testify against the defendant, whom he named as his accomplice in the crime.

The defendant was arrested in October 2000. The indictment returned against him charged only felony murder and depraved indifference murder, apparently because the five-year statute of limitations on all crimes other than murder had run (*see* CPL 1.20 [16] [a]; [17]; 30.10 [2] [a], [b]).

At the trial, the jury heard three different versions of the incident. Chesney testified that he had been driving a stolen Volvo with the defendant as his passenger. He stopped the vehicle and the defendant got out and grabbed the victim's purse. When she refused to release it, the defendant yanked on it several times until the strap broke and the victim fell down. The defendant returned to the car, and Chesney drove them away, leaving the victim lying in the street.

The defendant offered a very different account of the incident in a statement he gave to the police shortly after his arrest.[1] He admitted that "[he] and Dave [Chesney] . . . robbed an old white lady" on the day in question. But he claimed that he had been the one driving the stolen white Volvo and that Chesney had directed him to stop. According to the defendant, Chesney exited the vehicle, approached the victim, and grabbed her purse. When she refused to surrender it, he punched and kicked her repeatedly until she released it.

Finally, in testimony not challenged on this appeal, an emergency medical technician reported a statement made by the victim herself only minutes after the incident. She told the technician that she had been assaulted by two men, but she had no recollection of how she had ended up on the ground.

Forensic evidence revealed that the victim had died of multiple blunt impact injuries to the head, torso, and extremities, with accumulation of blood in the abdomen and lacerations of the spleen. The blunt trauma wound to the victim's abdomen had caused massive internal bleeding. According to the People's

---

1. That branch of the defendant's omnibus motion which was to suppress the statement was denied following a pretrial hearing. He does not challenge that ruling on appeal.

medical expert, the victim's injuries could have been caused by a foot or a hand, but were inconsistent with a simple fall from a standing position.

At the trial, the court at least twice suggested that the defendant's statement might provide a basis for the affirmative defense to the felony murder charge. As there is no allegation that either the defendant or Chesney was armed in the course of the robbery, the affirmative defense would have required the defendant to prove by a preponderance of the evidence that he "[d]id not commit the homicidal act or in any way solicit, request, command, importune, cause or aid the commission thereof" and that he "[h]ad no reasonable ground to believe that [Chesney] intended to engage in conduct likely to result in death or serious physical injury" (Penal Law § 125.25 [3] [a], [d]).

In summation, defense counsel argued that the account given in the defendant's statement was true and that Chesney's testimony was not. He maintained that "the believable credible evidence . . . is that Chesney did this and [the defendant] was driving the car" and could not be found guilty merely for being present. He argued that the defendant was not guilty of felony murder "because he did not share in Chesney's intent to commit the robbery, and there is no evidence in this record to establish that he did." Finally, as suggested by the trial court, counsel argued that, "even if [the defendant] knew that Chesney was going to commit the purse snatch, there is no proof whatsoever that he had a clue that Chesney was going to beat this woman to death, a purse snatch is just that." However, defense counsel never asked the court to instruct the jury on the affirmative defense. The jury convicted the defendant of both felony murder and depraved indifference murder, and he now appeals.

█ To begin with, we find merit in trial counsel's preserved claim that the evidence was legally insufficient to establish the elements of depravity and indifference to human life necessary for a conviction of depraved indifference murder. "The Court of Appeals has taught that, except in rare and extraordinary circumstances, one person's attack on another, no matter how violent or how great the risk of harm it creates, does not rise to the level of depravity and indifference to life contemplated by the statute defining depraved indifference murder" (*People v McMillon*, 31 AD3d 136, 142 [2006], *lv denied* 7 NY3d 815

[2006]).[2] Thus, the evidence here did not establish that crime. Moreover, although the evidence was legally sufficient to establish the lesser-included offense of manslaughter in the second degree (*see People v Atkinson*, 7 NY3d 765 [2006]; *People v McMillon, supra*), we do not modify the judgment pursuant to CPL 470.15 (2) (a) because the statute of limitations bars the defendant's conviction of that crime (*see* CPL 30.10 [2] [b]; *People v Turner*, 5 NY3d 476, 481-483 [2005]; *People v Mills*, 1 NY3d 269, 272 n 2 [2003]). Accordingly, the count of the indictment charging the defendant with depraved indifference murder must be dismissed.

█ We turn, then, to the defendant's claim that he was deprived of the effective assistance of counsel by his attorney's failure to request that the jury be instructed on the affirmative defense to felony murder. In evaluating such claims, we are "careful to distinguish between true ineffectiveness and losing tactics or unsuccessful efforts in advancing appropriate defenses" (*People v Stultz*, 2 NY3d 277, 283 [2004]). Thus, "to establish ineffective assistance, a defendant must 'demonstrate the absence of strategic or other legitimate explanations' for counsel's allegedly deficient conduct" (*People v Caban*, 5 NY3d 143, 152 [2005], quoting *People v Rivera*, 71 NY2d 705, 709 [1988]). In this case, our review of the record reveals no "strategic or other legitimate explanations" (*People v Rivera, supra* at 709), for counsel's failure to follow the trial judge's own suggestion and request that the jury be instructed on the affirmative defense.

Ordinarily, a defendant's successful assertion of the affirmative defense to felony murder would relieve him or her of criminal liability for that crime, but not for the underlying felony. In contrast, successfully raising a reasonable doubt as to the defendant's participation in the underlying felony—as trial counsel attempted to do here—would be a complete defense, relieving the defendant of criminal liability for both the underlying felony and the felony murder. Here, however, counsel's election to argue to the jury that the defendant did not share Chesney's intent to rob the victim, under the circumstances of

**2.** There is a recognized exception to this general rule, applicable when the defendant "engages in torture or a brutal, prolonged and ultimately fatal course of conduct against a particularly vulnerable victim" (*People v Suarez*, 6 NY3d 202, 212 [2005]). Although the victim here was a 75-year-old woman, she apparently was strong enough to resist the attack and, in any event, was not subject to "torture or a brutal, prolonged and ultimately fatal course of conduct" (*id.*).

this case, was inexplicable and offered the defendant no tactical or strategic advantage. First, the defendant was never in jeopardy of conviction for the underlying robbery. The statute of limitations had run on that charge and therefore it was not contained in the indictment.[3] Thus, the affirmative defense alone, if successful, would have served as a complete defense, relieving the defendant of liability for felony murder as well as for any accessorial liability in the reckless homicide underlying the depraved indifference murder count (see *Matter of Anthony M.*, 63 NY2d 270, 283 [1984]). Second, counsel's argument that the defendant's statement was true and that it showed he did not share Chesney's intent to rob the victim flew directly in the face of the statement itself which, as read to the jury, began: "On that day in the afternoon *me and Dave*, male white, 40's, balding on top with long hair in the back, *robbed an old white lady*" (emphasis added). Thus, there was no advantage in arguing that the defendant did not share the intent to rob the victim, and the decision not to pursue the affirmative defense gave up a complete defense to no discernible benefit.

The decision to forgo the affirmative defense was but one mistake in otherwise entirely competent representation. But, as the Court of Appeals has held, "[a] single error may qualify as ineffective assistance . . . when the error is sufficiently egregious and prejudicial as to compromise a defendant's right to a fair trial" (*People v Caban, supra* at 152; see *People v Turner*, 5 NY3d 476, 480 [2005]). The question, therefore, is whether this single error, for which there were no "strategic or other legitimate explanations" (*People v Rivera, supra* at 709), was sufficiently prejudicial to compromise the defendant's right to a fair trial. We hold that it was not.

Under the federal standard, ineffectiveness claims are evaluated under a two-pronged test. The defendant must show, first, "that counsel's representation fell below an objective standard of reasonableness," and, second, "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different" (*Strickland v Washington*, 466 US 668, 688, 694 [1984]). New York also employs a two-pronged test, with the first prong identical to its

---

**3.** It should be noted that the underlying felony is not generally considered a lesser-included offense of felony murder (see *People v Berzups*, 49 NY2d 417, 427 [1980]), but, even if it were, the robbery charge on which the statute of limitations had run could not be submitted to the jury as a lesser-included offense (see *People v Turner*, 5 NY3d 476, 481-483 [2005]).

federal counterpart. The second, however, "[is] somewhat more favorable to defendants" (*People v Turner, supra* at 480) in that it is "ultimately concerned with the fairness of the process as a whole rather than its particular impact on the outcome of the case" (*People v Benevento*, 91 NY2d 708, 714 [1998]; *see People v Ozuna*, 7 NY3d 913 [2006]; *People v Caban, supra* at 156). Thus, in New York, a defendant's showing of prejudice is a significant but not indispensable element in assessing meaningful representation (*see People v Stultz, supra*).

Even under the state standard, however, "[t]here can be no denial of effective assistance of trial counsel arising from counsel's failure to 'make a motion or argument that ha[d] little or no chance of success' " (*People v Caban, supra* at 152, quoting *People v Stultz, supra* at 287). Thus, the mere fact that the defendant would have been entitled to submit the affirmative defense had his counsel requested it, does not, in and of itself, prove that he was denied effective assistance (*see People v Russo*, 85 NY2d 872, 874 [1995] [holding that counsel's failure to request instruction on affirmative defense to felony murder "(did) not constitute ineffective assistance of counsel, in and of itself, under the entire circumstances of this case," assuming that "(the) defendant would have been entitled to the instruction"]).

On the record before us, we conclude that, had the affirmative defense been submitted to the jury, it would have had little or no chance of success. First, not only was it inconsistent with Chesney's testimony, but it was also contrary to the victim's own statement that she was assaulted by *two* men, not one. Second, the jury convicted the defendant of the depraved indifference murder charge and, although the evidence was legally insufficient to establish the requisite depravity and indifference to human life, the conviction nevertheless reflects, at minimum, the jury's supportable finding beyond a reasonable doubt that the defendant either personally caused the victim's death or else solicited, requested, commanded, importuned, or intentionally aided Chesney to engage in the conduct that caused the victim's death (*see* Penal Law §§ 20.00, 125.25 [2])—and this despite his trial counsel's specific and repeated arguments to the contrary (*cf. Matter of Anthony M., supra* at 283). Such a finding negates the first essential element of the affirmative defense, namely, that the defendant "[d]id not commit the homicidal act or in any way solicit, request, command, importune, cause or aid the commission thereof" (Penal Law § 125.25 [3] [a]). We

find, therefore that, under the circumstances of this case, the affirmative defense, if submitted to this jury, would have had little or no chance of success. Accordingly, we hold that counsel's failure to request the submission of the affirmative defense did not compromise the defendant's right to a fair trial, and therefore that he was not deprived of the effective assistance of counsel (*see People v Russo, supra* at 874).

The defendant's remaining contentions are without merit.

Accordingly, the judgment is modified, on the law, by vacating the defendant's conviction of murder in the second degree under Penal Law § 125.25 (2), vacating the sentence imposed thereon, and dismissing that count of the indictment; as so modified, the judgment is affirmed.

RIVERA, J.P., FLORIO and LUNN, JJ., concur.

Ordered that the judgment is modified, on the law, by vacating the defendant's conviction of murder in the second degree under Penal Law § 125.25 (2), vacating the sentence imposed thereon, and dismissing that count of the indictment; as so modified, the judgment is affirmed.