■ The People of the State of New York, Respondent, v Tony Canales, Appellant. [972 NYS2d 316]—

Appeal by the defendant (1) from a judgment of the Supreme Court, Kings County (J. Goldberg, J.), rendered October 16, 2008, convicting him of murder in the second degree and criminal possession of a weapon in the second degree, upon a jury verdict, and imposing sentence, and (2), by permission, as limited by his brief, from so much of an order of the same court dated November 4, 2011, as, after a hearing, denied that branch of his motion which was pursuant to CPL 440.10 to vacate so much of the judgment as convicted him of criminal possession of a weapon in the second degree and imposed sentence on that conviction.

Ordered that the order is reversed insofar as appealed from, on the law and the facts, that branch of the defendant's motion pursuant to CPL 440.10 which was to vacate so much of the judgment as convicted him of criminal possession of a weapon in the second degree and imposed sentence on that conviction is granted, that portion of the judgment is vacated, and the matter is remitted to the Supreme Court, Kings County, for a new trial on that count of the indictment; and it is further,

Ordered that the appeal from the judgment is dismissed as academic in light of the subsequent vacatur of the judgment, in

part pursuant to the order dated November 4, 2011, and in part pursuant to our determination on the appeal from the order.

The defendant was convicted of murder in the second degree and criminal possession of a weapon in the second degree for the shooting death of Antonio Bruce. The shooting allegedly arose out of an altercation between two groups of people on a street corner in Brooklyn. One of the primary pieces of evidence introduced at trial was a videotape which purportedly shows the defendant, wielding a handgun, chasing another person who enters the screen but falls and tumbles out of view. The prosecutor contended throughout the trial that the person being chased by the defendant was the victim, Bruce, and argued to the jury that the videotape provided evidence of the defendant's intent to kill Bruce. The People also introduced the defendant's voluntary confession to the police, in which he claimed that he borrowed the gun from a friend, but asked the friend to remove the clip so that it would not be loaded. The defendant claimed that he only intended to use the gun to scare away a group of people who were threatening his friends. He claimed that someone grabbed his arm and, as he spun around, the gun unexpectedly fired. The defendant's trial attorney accepted the prosecutor's arguments regarding the videotape, conceding during summation that the videotape depicted "the unfortunate demise" of Bruce, and that the videotape showed Bruce falling down and collapsing from the shot.

During deliberations, in response to a jury note asking to see "the video footage of the victim and [the defendant]," the defendant personally addressed the court, stating, "That is not the victim. He made his closing argument yesterday that the guy I'm chasing is the victim. The guy in front of me is not the victim. I could point it out to you." A colloquy ensued wherein the defendant appears to have declined an offer by the court to reopen his case and give testimony about the videotape. The jury subsequently returned a verdict of guilt on both counts.

The defendant filed a postjudgment motion pursuant to CPL 440.10 to vacate his conviction on the grounds of prosecutorial misconduct and ineffective assistance of counsel. At a hearing, the parties stipulated that the person being chased by the defendant in the videotape was not, in fact, Bruce. The prosecutor testified that he truly believed that the videotape depicted the defendant chasing Bruce, and that he did not willfully or deliberately attempt to mislead the jury. The defendant's trial counsel could not remember, at the time of the hearing, why he conceded that the videotape depicted the defendant chasing the victim, and he could not recall whether the defendant ever gave

him the names of witnesses who could rebut this fact. The defendant testified, among other things, that he only briefly met with his attorney in the back of the courtroom during various court appearances, that his attorney never showed him the videotape, and that he did not realize until summations that his attorney and the prosecutor had been arguing about whether the wrong person was identified as the victim.

In an order dated November 4, 2011, deciding the defendant's motion pursuant to CPL 440.10 on the issue of prosecutorial misconduct, the Supreme Court found that there was evidence from which the prosecutor could have realized that the person in the videotape was not Bruce, including the fact that the victim was not wearing the same clothes as the person in the videotape. The court also noted that the grand jury testimony of a witness who did not testify at trial would have alerted the prosecutor to the fact that the person being chased was not Bruce. Additionally, the court found that the witness's grand jury testimony would have established that the defendant and Bruce were friends and that the defendant had no motive to shoot him. The court found that the prosecutor was "grossly negligent," but stopped short of finding that he knowingly misrepresented the truth regarding the videotape.

The Supreme Court ultimately determined that it need not reach or decide the issue of prosecutorial misconduct because the defendant was clearly denied the effective assistance of counsel under both the federal and state constitutions. The court cited numerous errors by defense counsel, including his conceding, without any basis for doing so, that the victim was the person seen running in the videotape, failing to give the defendant the opportunity to view the videotape prior to trial, failing to discuss the videotape with the defendant prior to trial, and failing to attempt to reconcile the defendant's claim that the shooting was accidental with the videotape evidence showing the defendant chasing someone. The court vacated the murder conviction but nevertheless upheld the defendant's conviction of criminal possession of a weapon, holding that "the deficiencies in the performance of the prosecutor and defense counsel had no effect on the defendant's conviction of criminal possession of a weapon." The court stated, "in the absence of prejudice to the defendant, vacating the judgment of conviction on that charge is not appropriate." A Justice of this Court granted the defendant leave to appeal from the order deciding his CPL 440.10 motion, and that appeal was subsequently consolidated with his direct appeal from the judgment of conviction.

In declining to vacate the defendant's conviction of criminal possession of a weapon in the second degree, the Supreme Court erroneously applied the federal standard for ineffective assistance of counsel to the defendant's state constitutional claim of ineffective assistance of counsel. Upon our independent review of the record, the defendant's showing at the CPL 440.10 hearing that he was denied "meaningful representation" should have, under the circumstances, resulted in a new trial on the weapons possession count as well.

A defendant is guaranteed the effective assistance of counsel under both the federal and state constitutions (*see* US Const Amend VI; NY Const, art I, § 6; *People v Turner*, 5 NY3d 476, 479 [2005]). The state standard is considered "somewhat more favorable to defendants," focusing on "the fairness of the process as a whole rather than its particular impact on the outcome of the case" (*People v Benevento*, 91 NY2d 708, 714 [1998]; *People v Georgiou*, 38 AD3d 155, 161 [2007]). "[T]he constitutional requirements [for the effective assistance of counsel] are met when the defense attorney provides meaningful representation" (*People v Stultz*, 2 NY3d 277, 279 [2004] [internal quotation marks omitted]). While prejudice to the defendant is a necessary factor under the federal standard, embodied in a "but for" test (*see Strickland v Washington*, 466 US 668, 694 [1984]), under the state standard, "a defendant's showing of prejudice is a significant but not indispensable element in assessing meaningful representation" (*People v Georgiou*, 38 AD3d at 161; *see People v Stultz*, 2 NY3d at 284). "To meet the New York standard, a defendant need not demonstrate that the outcome of the case would have been different but for counsel's errors" (*Rosario v Ercole*, 601 F3d 118, 124 [2010]). Generally, harmless error analysis is inapplicable to an ineffective assistance of counsel claim arising from counsel's performance at trial (*see People v Benevento*, 91 NY2d at 714; *People v LaBree*, 34 NY2d 257, 260-261 [1974]; *see also People v Wicks*, 76 NY2d 128, 132 [1990]).

Here, the litany of failures by defense counsel documented by the Supreme Court established that the defendant was denied "meaningful representation" by his trial attorney. Notwithstanding the fact that there was strong evidence that the defendant possessed a loaded firearm during the incident in question, the New York State constitutional standard for the effective assistance of counsel "is ultimately concerned with the fairness of the process as a whole rather than its particular impact on the outcome of the case" (*People v Benevento*, 91 NY2d at 714). Because we find that the defendant was denied his fundamental

right to counsel, a new trial is warranted on the count of the indictment charging criminal possession of a weapon in the second degree. This Court's decision in *People v Fredericks* (48 AD3d 827 [2008]) does not require a contrary conclusion, since that case presented unique circumstances regarding remedy, which are not presented here.

The defendant's remaining contentions have been rendered academic in light of our determination. Skelos, J.P., Angiolillo, Roman and Hinds-Radix, JJ., concur.