People v Butler (2018 NY Slip Op 00181)





People v Butler


2018 NY Slip Op 00181


Decided on January 10, 2018


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on January 10, 2018
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

MARK C. DILLON, J.P.
BETSY BARROS
FRANCESCA E. CONNOLLY
ANGELA G. IANNACCI, JJ.


2015-04741

[*1]People of State of New York, respondent, 
v
Stephen J. Butler, Jr., appellant.


Paul Skip Laisure, New York, NY (Joshua M. Levine of counsel), for appellant.
Eric Gonzalez, District Attorney, Brooklyn, NY (Leonard Joblove, Morgan J. Dennehy, and Daniel Berman of counsel), for respondent.



DECISION & ORDER
Appeal by the defendant from an order of the Supreme Court, Kings County (Michael J. Brennan, J.), dated March 25, 2015, which, after a hearing, designated him a level three sex offender pursuant to Correction Law article 6-C.
ORDERED that the order is affirmed, without costs or disbursements.
By indictment in Gwinnett County, Georgia, dated September 6, 2001, the defendant was accused of violating Official Code of Georgia Annotated (hereinafter O.C.G.A.) § 16-12-100, which prohibits the knowing production of sexually explicit photographs depicting children under the age of 18. The indictment arose out of the defendant's alleged conduct of photographing female minors in provocative or seductive poses and in various stages of partial undress. Specifically, the defendant dropped off 99 rolls of film at a Kroger store for developing, insisting upon only receiving negatives rather than prints. When store employees accidentally developed some prints and saw the images depicted on them, they reported the matter to the police, which led to the indictment.
On January 27, 2003, the defendant entered a plea of guilty to one count of sexual exploitation of children (O.C.G.A. § 16-12-100). He was sentenced to 5 years of incarceration and 15 years of probation.
In 2014, the defendant established residence in Kings County, New York, and, as required, registered as a sex offender. Under the risk assessment instrument (hereinafter RAI), the defendant was assessed a total of 115 points, which is a presumptive level three designation.
At a hearing pursuant to the Sex Offender Registration Act (see Correction Law § 168 et seq.; hereinafter SORA), the People's evidence included an investigator's report prepared by the detective assigned to the criminal case. The investigator's report indicated that when the defendant dropped off the 99 rolls of film at Kroger, he gave a false name, "Steve Holbrook," and a false telephone number, and said that the store need not call him as he would pick up the negatives on his own when the job was done. The report further indicated that when the detective first spoke with the defendant, the defendant admitted that he photographed girls at several locations in the metro Atlanta area, which included 10 or 15 of the rolls of film that he had picked up at Kroger. At another time during the interview, the defendant said that he had found the 99 rolls of film that were from his past and had them developed to see what was on them. The defendant admitted to the existence of some additional "inappropriate" photographs inside his automobile and consented to its search. [*2]The search of the automobile resulted in the discovery of negatives of girls in provocative poses. In addition, the automobile's trunk contained "fabric, needles and thread used for making very small thong type underwear," as well as "skimpy outfits," bathing suits, and dresses, including a multicolored dress with heart shapes matching a dress worn by a girl in lewd positions in one of the Kroger rolls of film. During his interview, the defendant admitted to having been present when the photographs were taken of the girl in the multicolored dress with hearts but denied being the actual photographer. The detective spoke with a small number of girls whose identities could be ascertained. He also spoke to their mothers. One of the girls recounted a photo shoot where the defendant was described as pulling the girl's bathing suit bottoms "up her butt crack'" in a way that made her feel uncomfortable, and that the defendant had "asked her to show some of her butt.'" In the same investigator's report, the detective stated that the photographs from Kroger included those "of a young white female approximately 8-10 years of age," and that one of the photographs showed the defendant with his arm around a girl.
The defendant testified at the SORA hearing that he came into possession of the film by mail from a man in Texas for whom he was going to build a website. On cross-examination, the defendant testified that he had photographed girls of all ages at several Atlanta area locations, including girls under the age of 10, but denied that those photographs were among the ones for which he was convicted.
The defendant's SORA testimony is at odds with statements the defendant allegedly made to the detective—that he took the photographs on 10 or 15 of the Kroger rolls, and that he had "found" the 99 rolls. The defendant's testimony did not reconcile with the multicolored dress in his car matching that which was worn by a girl in one of the Kroger rolls, nor with the Kroger photograph that depicted himself with an arm around a girl. During his testimony, the defendant did not contest the use of a false name and phone number at Kroger, his insistence that Kroger develop negatives only, and his desire to pick up the negatives without being called.
The defendant's counsel at the SORA hearing challenged the assessment of points under risk factor 3 (number of victims, three or more) on the ground that in child pornography cases, this factor has a tendency to produce an over-assessment of risk, and risk factor 7 (relationship with the victims) on the ground that there was no direct contact between the defendant and the victims. Defense counsel did not challenge the assessment of points under risk factor 5 (age of victim, 10 or less).
In an order dated March 25, 2015, the Supreme Court determined that the People had presented clear and convincing evidence supporting the assessment of 115 points, which qualified the defendant as a level three sex offender. The court declined to grant a downward departure.
On appeal, the defendant argues that the evidence against him was insufficient on the specific ground that the investigator's report failed to establish risk factors 3 and 5. However, at the SORA hearing, the defendant made no such arguments, rendering them unpreserved for appellate review (see CPL 470.05[2]; People v Game, 131 AD3d 460; People v Patterson, 51 AD3d 750). We decline to reach the defendant's sufficiency arguments in the exercise of our interest of justice jurisdiction.
The defendant also argues on appeal that his attorney was ineffective for failing to argue at the SORA hearing the insufficiency of the evidence as to risk factors 3 and 5. Under the federal ineffective assistance of counsel standard, the defendant must satisfy a two-pronged test: (1) "that counsel's representation fell below an objective standard of reasonableness," and (2) "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different" (Strickland v Washington, 466 US 668, 688, 694; see People v Georgiou, 38 AD3d 155, 160). New York applies a somewhat different two-pronged standard. Although the first prong is identical to its federal counterpart, the second prong focuses on prejudice and is based on the fairness of the process as a whole as distinguished from the impact of counsel's errors on the outcome (see People v Henry, 95 NY2d 563, 566; People v Benevento, 91 NY2d 708, 714; People v Georgiou, 38 AD3d at 160-161; People v Brown, 300 AD2d 314, 315).
Here, the defendant's SORA counsel was not ineffective for failing to argue the insufficiency of risk factor 3 evidence that there were more than two victims. We find unpersuasive the defendant's argument, as adopted by our dissenting colleague, that SORA counsel was unfamiliar with the investigator's report by virtue of arguing that in child pornography cases, victims will always be strangers not put at risk by the defendant. In fact, counsel's argument was factually consistent with the defendant's own carefully crafted SORA testimony that he did not take the specific photographs that formed the basis for his conviction. Counsel's better familiarity with the particulars of People v Gillotti (23 NY3d 841) would have made no measurable difference to the outcome of the hearing. In any event, the investigator's report constituted reliable hearsay that was properly admitted into evidence at the SORA hearing (see People v Mingo, 12 NY3d 563, 576; People v Davis, 130 AD3d 598, 599-600), which the court could find persuasive since portions of the defendant's SORA testimony were convincingly refuted by it. Ineffectiveness of counsel will not be found if an argument that could have been made in a proceeding would have had little or no chance of success (see People v Ennis, 11 NY3d 403, 415; People v Stultz, 2 NY3d 277, 287). The investigator's report, which identified more than two victims for risk factor 3, was necessarily credited by the Supreme Court. Thus, any additional potential defense argument about risk factor 3 would have had little or no chance of success.
As for risk factor 5 (age of victim, 10 and under), the investigator's report provided an age range for a victim that fully fell within the age definition contained in risk factor 5. For this factor to apply, only one victim needed to be 10 years old or younger. The defendant admitted, in his own SORA testimony, that girls under the age of 10 were among those whom he photographed in the Atlanta area, while not admitting that those girls and photographs were within the scope of his guilty plea. Nonetheless, the Court of Appeals has held that SORA courts assessing points for an offense are not limited to matters of the defendant's current conviction, but may also assess points for other acts presented in the form of reliable evidence, such as victim statements, official reports, and, as relevant here, admissions of the offender (see People v Sincerbeaux, 27 NY3d 683, 688-689). Indeed, in People v Vasquez (149 AD3d 1584), where, as here, the defendant challenged the assessment of points under risk factors 3 and 5, the Appellate Division, Fourth Department, held that in determining the number and age of victims, the SORA hearing court is not limited to the evidence of the crime of which the defendant was convicted (see id. at 1585; see also People v Menjivar, 121 AD3d 660, 661; People v Robertson, 101 AD3d 1671, 1671-1672; People v Madera, 100 AD3d 1111, 1112; People v Gardiner, 92 AD3d 1228, 1229; People v D'Adamo, 67 AD3d 1132, 1133; People v Thomas, 59 AD3d 783, 784).
Based on the totality of the evidence here, we cannot conclude that SORA counsel was ineffective for failing to argue the insufficiency of the evidence with respect to a victim's age. The evidence before the Supreme Court, consisting of the defendant's hearing testimony that he photographed girls under the age of 10, combined with the age-qualifying contents of the investigator's report which is deemed reliable hearsay (see People v Mingo, 12 NY3d at 576), established risk factor 5 by clear and convincing evidence (see People v Destio, 145 AD3d 1047, 1048). Under the federal standard for ineffectiveness of counsel, any age-related insufficiency argument that could have been made does not create a "probability" of a different SORA result (Strickland Washington, 466 US at 694; see People v Georgiou, 38 AD3d at 160). Likewise, under the New York standard, the SORA hearing as a whole was not rendered unduly prejudicial or unfair (see People v Henry, 95 NY2d at 566; People v Benevento, 91 NY2d at 714; People v Georgiou, 38 AD3d at 160-161; People v Brown, 300 AD2d at 315).
Accordingly, we affirm the order appealed from.
DILLON, J.P., CONNOLLY and IANNACCI, JJ., concur.
BARROS, J., dissents, and votes to reverse the order, on the law, and remit the matter to the Supreme Court, Kings County, for a new risk level assessment hearing and a new determination, with the following memorandum:
On January 27, 2003, the defendant was convicted in the State of Georgia, upon his plea of guilty, of one count of sexual exploitation of children (O.C.G.A. § 16-12-100), in that on June 28, 2001, he did knowingly create and reproduce photographs of girls under the age of 18 years engaged in sexually explicit conduct.
The Board of Examiners of Sex Offenders (hereinafter the Board) prepared a risk assessment instrument (hereinafter the RAI) dated May 6, 2014, in which it assessed the defendant 115 points and presumptively designated him a level three sex offender. At a hearing pursuant to the Sex Offender Registration Act (see Correction Law art 6-C; hereinafter SORA), the People relied primarily upon an investigator's report from the Gwinnett County Police Department in Georgia to support the assessment of a total of 115 points, including 30 points under risk factor 3 for "three or more" victims and 30 points under risk factor 5 for "age of victim" being 10 years old or less. The Georgia police investigator's report detailed allegations that the defendant represented himself as a photographer for a modeling agency, actively recruited young girls as models, and took inappropriate photographs of the girls. The defendant challenged the assessment of points under risk factor 3 for "three or more" victims and risk factor 7 for the nature of his relationship with the victims, arguing that in child pornography cases generally, the defendants and victims are strangers, and the victims are not placed directly at risk by the defendants. After the hearing, the Supreme Court designated the defendant a level three (high risk) sex offender.
The defendant did not argue at the SORA hearing, as he does now, that the points assessed under risk factors 3 and 5 were not supported by clear and convincing evidence. Since the defendant did not object to the designation on the grounds he now raises, I agree with the majority that the defendant's contentions are unpreserved for appellate review (see People v Benitez, 140 AD3d 1140; People v Angelo, 3 AD3d 482), and that we should decline to reach them in the exercise of our interest of justice jurisdiction.
However, I vote to reverse the order since the defendant was deprived of the effective assistance of counsel at the SORA hearing. "A sex offender facing risk level classification under SORA has a right to the effective assistance of counsel" (People v Willingham, 101 AD3d 979, 979; see People v Bowles, 89 AD3d 171, 173). Defense counsel was admittedly unfamiliar with the case upon which he expressly relied at the SORA hearing, People v Gillotti (23 NY3d 841), and unsuccessfully sought an adjournment of the SORA hearing for the purpose of reviewing that case. Counsel then proceeded to argue that Gillotti stood for the proposition that "the anomaly in all child pornography cases [is that] they are always going to be strangers and these are people who are not being put directly at risk by the defendant." However, in Gillotti, the Court of Appeals held just the opposite: "Given that child pornography offenders substantially harm the mental health of abused children and, via the consumption of child pornography, encourage others to commit the hands-on sexual abuse needed to produce that material, it is difficult to credit defendants' claims that, due to their failure to personally physically abuse children, the risk of harm caused by their offenses should not be accounted for in the manner authorized by the plain language of factors 3 and 7" (id. at 857). Moreover, counsel's argument demonstrated that he was not sufficiently familiar with the Gwinnett County Police Department investigator's report, which alleged that the defendant was an active participant in the creation of child pornography and had personally physically abused children. Given those allegations against the defendant and his plea of guilty to the charges, counsel's argument was patently absurd.
Most significantly, counsel failed to contest the assessment of 30 points under risk factor 5 for "age of victim" being 10 years old or less, which was based upon the Georgia investigator's estimate of the approximate age range of one of the unidentified victims shown in the photographs (see People v Cephus, 128 AD3d 656). Counsel did not request the Georgia criminal file, including the photographs upon which the age range estimate was based, or contend that an estimate of an approximate age range did not constitute clear and convincing evidence that the unidentified victim was 10 years old or less. In People v Cephus, this Court found that "the equivocal grand jury testimony of a physician who examined the complainant . . . did not constitute clear and convincing evidence that the complainant was 10 years old at the time of the offenses" (id.). Here, the People relied upon an unavailable witness's estimate of an unknown victim's age range, which was based upon inspection of photographs that were not produced in court.
While the majority relies upon the defendant's SORA hearing testimony to support its determination, the record shows that neither the People nor the Supreme Court relied upon the defendant's SORA hearing testimony to establish any of the assessed points. Indeed, the Board prepared the RAI and assessed the 30 points under risk factor 5 months before the SORA hearing was held. Moreover, even though the defendant admitted on cross-examination that he took photographs of children aged 10 years old or younger, there was no evidence introduced or argument made that those photographs, or the circumstances involved in the taking of those photographs, involved sexual conduct such that any of those children may be considered victims for purposes of SORA (see People v Izzo, 26 NY3d 999, 1002). Indeed, the investigator's report identified only the one unknown girl who was estimated to be under the age of 10, and acknowledged that many of the film rolls in the defendant's possession did not contain inappropriate images of the children shown therein.
It was undisputed that one of the identified victims who was interviewed by the Georgia investigator was, in fact, 12 years old. As such, there was clear and convincing evidence to support the assessment of 20 points under risk factor 5 for victims aged 11 to 16, rather than the 30 points that were assessed for victims aged 10 or less. The 10 point difference reduces the defendant's overall score to 105, which corresponds with a level two (moderate risk) sex offender.
"To establish a violation of the Sixth Amendment right to the effective assistance of counsel, a defendant must show, first, that counsel's representation fell below an objective standard of reasonableness,' and additionally, that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different'" (People v Casey, 149 AD3d 771, 771-772, quoting Strickland v Washington, 466 US 668, 688, 694). "Under the New York State Constitution, a defendant must demonstrate that counsel failed to provide meaningful representation based on the totality of the representation' and does not have to establish prejudice, as required under the federal standard'" (People v Casey, 149 AD3d at 772, quoting People v Hogan, 26 NY3d 779, 790; see People v Baldi, 54 NY2d 137, 147).
Overall, counsel's unfamiliarity with the evidence and the law, and his failure to challenge the points assessed under risk factor 5, demonstrate that counsel's representation fell below an objective standard of reasonableness, and establish that counsel did not provide meaningful representation to the defendant (see People v Willingham, 101 AD3d at 979; People v Reid, 59 AD3d 158, 158-159). Given that the assessment of 30 points under risk factor 5 was based upon a mere age range estimate, there is a reasonable probability that a challenge to the points assessed under that risk factor would have resulted in an overall lower presumptive risk level designation at the SORA hearing.
Accordingly, I vote to reverse the order appealed from and remit the matter to the Supreme Court, Kings County, for a new risk level assessment hearing and a new determination.
ENTER:
Aprilanne Agostino
Clerk of the Court